**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| LOCAL 191 I.B.E.W. JOINT TRUST FUNDS, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | |
| Plaintiff, ) ) | Civil Action No. <u>12-cv-2046 KH</u>V/DJW |
| vs. ) ) ) | DEMAND FOR JURY TRIAL |
| COLLECTIVE BRANDS, INC., MATTHEW E. RUBEL, DOUGLAS J. TREFF and DOUGLAS G. BOESSEN, ) ) ) ) | CLASS ACTION |
| Defendants. ) ) ) | |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

**INTRODUCTION**

1.       This is a securities class action on behalf of all persons who purchased or otherwise

acquired the common stock of Collective Brands, Inc. ("Collective Brands" or the "Company")

between December 1, 2010 and May 24, 2011, inclusive (the "Class Period"), against Collective

Brands and certain of its officers and/or directors for violations of the Securities Exchange Act of

1934 (the "1934 Act").

2.       Collective Brands operates a hybrid business model that includes retail, wholesale,

licensing, digital commerce and franchising businesses.  Collective Brands is the holding company

for three lines of business: Payless ShoeSource ("Payless"), Collective Brands Performance +

Lifestyle Group ("PLG"), and Collective Licensing ("CLI").  The Company operates its business in

four segments: Payless Domestic, Payless International, PLG Wholesale and PLG Retail.  The

Company was formerly known as Payless ShoeSource, Inc. and changed its name to Collective

Brands in August 2007.

3.       During the Class Period, defendants issued materially false and misleading statements

regarding the Company's business and financial results.  As a result of defendants' false statements,

Collective Brands stock traded at artificially inflated prices during the Class Period, reaching a high

of $23.44 per share on February 18, 2011.

4.       On May 24, 2011, after the market closed, the Company announced its financial

results for its first fiscal quarter ended April 30, 2011.[1]  The Company reported earnings of $26.4

million or $0.42 diluted earnings per share ("EPS") for the first quarter, which was nearly 50% less

than the $0.82 diluted EPS expected by analysts.  The Company further reported that net sales

---

[1]       Collective Brands' fiscal year ends the last Saturday in January.

declined 1.1% to $869.0 million, due in substantial part to the Company's 7.4% comparable store sales decline in its Payless Domestic segment, offset by sales growth of 22.5% in PLG.

5.      On this news, Collective Brands stock collapsed $3.06 per share to close at $15.31 per share on May 25, 2011, a one-day decline of nearly 17% on volume of 10 million shares.

6.      The true facts, which were known by defendants but concealed from the investing public during the Class Period, were as follows:

(a)      the Company's inventory level for Payless remained at excessively high levels and aging inventory for its Payless segment was a concern;

(b)      sales at the Company's flagship Payless stores were significantly worse than expected due to deteriorating customer demand, including for its "expressive" consumers; and

(c)      the Company was forced to mark down Payless's bloated inventory at significant discounts, which adversely affected the Company's margins and financial results for its first quarter.

7.      As a result of defendants' false statements and omissions, Collective Brands common stock traded at artificially inflated prices during the Class Period.  However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down nearly 35% from their Class Period high.

## JURISDICTION AND VENUE

8.      Jurisdiction is conferred by §27 of the 1934 Act.  The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

9.      Venue is proper in this District pursuant to §27 of the 1934 Act.  Collective Brands is headquartered in Topeka, Kansas, and many of the false and misleading statements were disseminated within this District.

10.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

11.     Plaintiff Local 191 I.B.E.W. Joint Trust Funds purchased the common stock of Collective Brands during the Class Period as set forth in the certification attached hereto and was damaged as the result of defendants' wrongdoing as alleged in this complaint.

12.     Defendant Collective Brands operates a hybrid business model that includes retail, wholesale, licensing, digital commerce and franchising businesses.  The Company's principal executive offices are located at 3231 Southeast Sixth Avenue, Topeka, Kansas.

13.     Defendant Matthew E. Rubel ("Rubel") was, at all relevant times, the Company's Chairman of the Board, Chief Executive Officer ("CEO") and a director.  On June 15, 2011, Rubel resigned from the Company.

14.     Defendant Douglas J. Treff ("Treff") is, and at all relevant time has been, the Company's Executive Vice President and Chief Administrative Officer.

15.     Defendant Douglas G. Boessen ("Boessen") is, and at all relevant times has been, the Company's Chief Financial Officer ("CFO").

16.     Defendants Rubel, Treff and Boessen (the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Collective Brands' quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information

available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein.

**FRAUDULENT SCHEME AND COURSE OF BUSINESS**

17.     Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Collective Brands.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Collective Brands common stock was a success, as it: (i) deceived the investing public regarding Collective Brands' prospects and business; (ii) artificially inflated the price of Collective Brands common stock; and (iii) caused plaintiff and other members of the Class to purchase Collective Brands common stock at inflated prices.

18.     The top officers and directors of Collective Brands also benefited, as the Company's purportedly favorable operating results contributed to the compensation paid to the top officers during the Class Period, some of whom received as much as $7.8 million per year.

**BACKGROUND**

19.     Collective Brands operates a hybrid business model that includes retail, wholesale, licensing, digital commerce and franchising businesses.  Collective Brands is the holding company for three business lines:  Payless, PLG, and CLI. The Company operates its business in four segments:  Payless Domestic, Payless International, PLG Wholesale and PLG Retail.  The Payless Domestic segment consists of domestic retail stores under the Payless ShoeSource name, as well as the Company's sourcing unit and CLI.  The Payless International reporting segment consists of international retail stores under the Payless ShoeSource name in Canada, the South American Region, the Central American Region, Puerto Rico and the United States Virgin Islands, as well as the franchising arrangements under the Payless ShoeSource name.  The PLG Wholesale segment

consists of PLG's global wholesale operations, as well as dealer operations.  The PLG Retail segment consists of results from PLG's Stride Rite Children's stores and Stride Rite Outlet stores. Collective Brands is located in Topeka, Kansas.

20.     Payless is the Company's largest business segment – over 60% of its revenue was derived from this segment in 2010.  Beginning in the fourth quarter of 2009, Payless began dramatically losing market share due to a series of merchandizing and inventory missteps, and the Company's inventories began increasing significantly more than sales.  After the Company announced disappointing second quarter 2010 results due to a lack of trend right merchandise in key categories, the Company announced its turnaround strategy, which would re-focus its main target customer from the "low-priced" consumer to the "expressive" consumer.  The Company defined the expressive consumer as being a customer who values fashionable footwear but demands a great price.  According to the Company, the new focus on trendier fashions and away from bargain conscious consumers would drive sales of higher priced products and increase average selling price. Moreover, the focus away from the bargain shoppers would help support top-line sales growth and gross margin.  The Company further announced that it had corrected its inventory management issues and its current inventory mix was inline.

### DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

21.     On December 1, 2010, Collective Brands issued a press release announcing its financial results for its third fiscal quarter ended October 30, 2010.  The Company reported earnings of $47.6 million, or $0.75 diluted EPS, and a net sales increase of 1.7% to $881.8 million for the quarter.  The Company further reported its long-term guidance, setting a target to grow EPS by 12% to 16% annually, driven by 3% to 5% net sales growth.  The release stated in part:

> "Collective Brands had a strong quarter, as we again delivered a double-digit percentage earnings increase. Our business model is working well – offering customers great brands across multiple categories, price points, distribution channels

and geographies while leveraging shared platforms and capabilities," said Matthew E. Rubel, Chairman, Chief Executive Officer and President of Collective Brands, Inc. "Our Performance & Lifestyle Group delivered sales growth in every brand – Sperry Top-Sider, Saucony, Keds and Stride Rite – and in each distribution channel: wholesale, retail, and e-commerce. Payless sales and earnings again showed strong growth internationally, while the domestic business showed improvement from the second quarter."

22.     Based on these statements, Collective Brands stock increased $2.79 per share to close at $20.38 per share, a one-day increase of nearly 16% on high volume, on December 2, 2010.

23.     On February 18, 2011, Collective Brands stock reached its Class Period high, closing at $23.44 per share.

24.     On March 2, 2011, Collective Brands issued a press release announcing its financial results for its fourth quarter and fiscal year ended January 29, 2011.  The Company reported a fourth quarter 2010 net loss of $10.1 million, or $0.16 diluted EPS, and a net sales increase of 4.3% to $773.8 million for the quarter.  The Company further reported full year 2010 net earnings of $112.8 million, or $1.75 diluted EPS, and a net sales increase of 2% to $3.38 billion for the year.  Collective Brands reiterated its long-term guidance for the Company.  The release stated in part:

> "We finished a strong year with a solid fourth quarter as our portfolio of leading brands and innovative, on-trend products connected with consumers across geographies and price points. As a result, we delivered improved financial results for both the fourth quarter and the year," said Matthew E. Rubel, Chairman, Chief Executive Officer and President of Collective Brands, Inc. "In aggregate, the strength of our hybrid business model enabled us to grow in a variety of ways in 2010. PLG delivered record annual sales and earnings. Payless successfully expanded franchising, accessory categories, and its footwear house of brands. Going into 2011, we have great momentum in wholesale and international, improving domestic retail sales, and a strong balance sheet."

25.     On May 24, 2011, Collective Brands stock closed at $18.37 per share.

26.     Then, after the market closed on May 24, 2011, Collective Brands announced financial results for its first quarter of fiscal 2011, reporting earnings of $26.4 million or $0.42 diluted EPS for the first quarter, which was nearly 50% less than the $0.82 diluted EPS expected by analysts.  The Company further reported that net sales declined 1.1% to $869.0 million, due in

substantial part to the Company's 7.4% comparable store sales decline in its Payless Domestic

segment, offset by sales growth of 22.5% in PLG.  The release stated in part:

> "We had a challenging first quarter driven by increasingly unfavorable
> economic conditions affecting mass market consumers as well as unseasonably cold
> weather. These factors unfavorably affected Payless stores in North America leading
> to lower customer traffic and sales. We are taking actions to provide better value to
> customers in light of these economic conditions. As a result, the second quarter is off
> to a better start," said Matthew E. Rubel, Chairman, Chief Executive Officer and
> President of Collective Brands, Inc. "Other components of our hybrid business model
> continued to deliver strong results in the first quarter including PLG Wholesale,
> Payless Latin America, and franchising operations."

27.     On this news, Collective Brands' stock plummeted $3.06 per share to close at $15.31

per share on May 25, 2011, a one-day decline of nearly 17% on high volume.

28.     On May 25, 2011, Susquehanna Financial Group LLLP issued a report entitled

"Collective Brands, Inc.: Steep 1Q Miss Resets the Bar on Expectations."  The report stated in part:

> PSS's surprisingly large 1Q EPS miss points to concerns over the balance of
> the year.  We expect the shares to remain in the penalty box until measurable
> improvements in both sales and margin trends are seen.

**HIGHLIGHTS**

> 1Q EPS of $0.42 was well below our and the Street estimate of $0.82.

> *       *       *

- > **The magnitude of the domestic top-line miss is a concern moving
>   forward**. While weather clearly played a role in the domestic comp miss, we
>   were surprised at the magnitude given strong footwear product trends
>   industrywide.  Most footwear retailers have reported solid 1Q comp results
>   despite bad weather, difficult toning comparisons, and the late Easter.

29.     Subsequently on June 15, 2011, defendant Rubel resigned from the Company.

30.     Thereafter, on June 29, 2011, the Company attended an Oppenheimer & Co.

Consumer Conference with media representatives, analysts and investors, during which interim CEO

Michael Massey represented the following:

> [MASSEY:]   Now I would like to discuss our Payless US operations.
> They're the larger part of our operations, but they're also the more challenged part of

our operations.  The US business faces difficult trends.  It has a mature base of approximately 3800 stores, as shown on the map. It has 4% market share and declining traffic and sales.  Payless had a poor first-quarter performance.  The drivers of the performance were unfavorable weather; gas and food inflation's impact on the mass-market customer; product cost inflation, all of which drove a price value opposition, which we believe resulted in our customer not finding our product appealing.

How did we get here?  Well, economic adversity has accelerated the stratification of our customers and their behaviors.  Our customers have wide variations in perception of our current value proposition.  Some are okay with it. They are buying.  We believe our more price sensitive customer is not.  We significantly narrowed our product offerings relevant to our most price-sensitive consumers by raising our opening price points and increasing our proportion of SKUs at higher price points.  Like other retailers in the last decade, we used a strategy of taking brands and prices up.  We maximized margin rate, not margin dollars.

Segments of our customers stopped responding to our brand and didn't respond to our messaging. We didn't react in time.  Our messaging around value decreased significantly, especially to our most price-sensitive consumers.  Our mass marketing spend decreased.  Our message is focused on brand and lifestyle, not value, and our placement of advertising skewed to higher-end demographics, so, some of our customers left us.

So what are we going to do about it? Well, we're acting immediately.  ***We are selectively reducing our initial mark-on targets and repricing our inventory.  We are sharpening our promotional activity.  We're going to have bounce-back coupons, additional markdowns, and free shipping online with minimum purchase***. Most importantly, we are doing something that many of our competitors can't. We're using our associates in our store.  At Payless, it's not just self-selection. You get service through our associates.

So we're giving our associate tools to increase engagement with the customers, to drive conversion.  We're adding staffing hours, customer conversion contests, and we have initiated a save-a-sale couponing through our store leaders.

31.     The true facts, which were known by the defendants but concealed from the investing

public during the Class Period, were as follows:

(a)     the Company's inventory level for Payless remained at excessively high levels

and aging inventory for its Payless segment was a concern;

(b)     sales at the Company's flagship Payless stores were significantly worse than

expected due to deteriorating customer demand, including for its "expressive" consumers; and

(c)     the Company was forced to mark down Payless's bloated inventory at significant discounts, which adversely affected the Company's margins and financial results for its first quarter.

32.     As a result of defendants' false statements, Collective Brands stock traded at artificially inflated levels during the Class Period.  However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down nearly 35% from their Class Period high.

## LOSS CAUSATION/ECONOMIC LOSS

33.     During the Class Period, as detailed herein, the defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Collective Brands common stock and operated as a fraud or deceit on Class Period purchasers of Collective Brands common stock by misrepresenting the Company's business and prospects.  Later, when the defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Collective Brands common stock fell precipitously, as the prior artificial inflation came out of the price over time.  As a result of their purchases of Collective Brands common stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

34.     Collective Brands' verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

35.     The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Collective Brands who knew that the FLS was

false.  None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Collective Brands common stock during the Class Period (the "Class").  Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Collective Brands has over 60.5 million shares of stock outstanding, owned by hundreds if not thousands of persons.

38.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

        (a)     whether the 1934 Act was violated by defendants;

        (b)     whether defendants omitted and/or misrepresented material facts;

        (c)     whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)      whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)      whether the price of Collective Brands common stock was artificially inflated; and

(f)      the extent of damage sustained by Class members and the appropriate measure of damages.

39.      Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

40.      Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

41.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

42.      Plaintiff incorporates ¶¶1-41 by reference.

43.      During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44.      Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)      employed devices, schemes and artifices to defraud;

       (b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

       (c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Collective Brands common stock during the Class Period.

45.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Collective Brands common stock. Plaintiff and the Class would not have purchased Collective Brands common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

46.     Plaintiff incorporates ¶¶1-45 by reference.

47.     The Individual Defendants acted as controlling persons of Collective Brands within the meaning of §20(a) of the 1934 Act. By virtue of their positions with the Company, and ownership of Collective Brands stock, the Individual Defendants had the power and authority to cause Collective Brands to engage in the wrongful conduct complained of herein. Collective Brands controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B.     Awarding plaintiff and the members of the Class damages, including interest;

C.      Awarding plaintiff reasonable costs and attorneys' fees; and

D.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

### **JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL**

Plaintiff hereby demands a trial by jury of all issues properly triable.  Pursuant to Local Rule 40.2(a), Plaintiff hereby designates Kansas City, Kansas as the place of trial of this action.

DATED:  January 25, 2012                Respectfully submitted,

                                        STUEVE SIEGEL HANSON LLP

                                         /s/ Rachel E. Schwartz
                                        RACHEL E. SCHWARTZ – KS #21782
                                        460 Nichols Road, Suite 200
                                        Kansas City, MO  64112
                                        Telephone:  816/714-7125
                                        816/714-7101 (fax)
                                        schwartz@stuevesiegel.com

                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        DARREN J. ROBBINS
                                        DAVID C. WALTON
                                        CATHERINE J. KOWALEWSKI
                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)
                                        darrenr@rgrdlaw.com
                                        davew@rgrdlaw.com
                                        katek@rgrdlaw.com

                                        Attorneys for Plaintiff

- 13 -

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

LOCAL 191 I.B.E.W. JOINT TRUST FUNDS ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

*Local 191 I.B.E.W. Joint Trust Funds v. Mindray Medical International Limited, et. al.*, No. 1:11-cv-05021 (S.D.N.Y.)

6.      The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _24_ day of _JANUARY_, 2011.

LOCAL 191 I.B.E.W. JOINT TRUST FUNDS

By: _____

Its: _____

- 2 -

COLLECTIVE BRANDS

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 12/28/2010 | 1,975 | $20.61 |
| 05/10/2011 | 200 | $19.70 |